## THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF SOUTH CAROLINA
### FLORENCE DIVISION

| | |
|---|---|
| DANIEL STEEN,<br>individually and on behalf of all others<br>similarly situated,<br><br>      Plaintiff,<br><br>v.<br><br>SONOCO PRODUCTS COMPANY, THE<br>BOARD OF DIRECTORS OF SONOCO<br>PRODUCTS COMPANY, THE EMPLOYEE<br>BENEFITS COMMITTEE OF SONOCO<br>RETIREMENT AND SAVINGS PLAN, and<br>JANE AND JOHN DOES 1-20.<br><br>      Defendants. | Case Number:  4:24-cv-03105-JD<br><br>Judge Joseph Dawson, III |

**DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT AND MEMORANDUM OF LAW IN SUPPORT**

**TABLE OF CONTENTS**

**Page**

MOTION STATEMENT ............................................................................................................1

INTRODUCTION ...................................................................................................................1

RELEVANT FACTS................................................................................................................3

       A.      Sonoco Consistently Negotiated Lower Recordkeeper Fees ...................................4

       B.      The Council Actively Monitored The Plan And Offered Numerous Investment Options.................................................................................................5

       C.      Steen's Second Amended Complaint Does Not Remedy The Factual Deficiencies Noted by the Court..................................................................................6

LEGAL STANDARD ..............................................................................................................8

ARGUMENT .........................................................................................................................9

I.      STEEN'S GENERALIZED AND CONCLUSORY ALLEGATIONS FAIL TO ESTABLISH A CLAIM FOR BREACH OF THE FIDUCIARY DUTY OF PRUDENCE .................................................................................................................9

       A.      Steen Fails to Plausibly Allege That the Plan's Administrative and Recordkeeping Fees Were Excessive.........................................................................9

       B.      Steen's Allegations That There are No Material Differences in Recordkeeping Services Are Unsupported ...........................................................12

II.     STEEN'S MONITORING CLAIM FAILS BECAUSE IT IS DEVOID OF ANY FACTUAL SUPPORT AND CANNOT SURVIVE AS A STANDALONE CLAIM...................................................................................................................15

CONCLUSION.....................................................................................................................17

**TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Adkins v. Bank of N.Y. Mellon*,
 2017 WL 2215131 (D. Md. May 19, 2017)...............................................................18

*Albert v. Oshkosh Corp.*,
 47 F.4th 570 (7th Cir. 2022) ....................................................................................15

*Alive Church of the Nazarene, Inc. v. Prince William Cnty.*,
 59 F.4th 92 (4th Cir. 2023) .........................................................................................9

*Ashcroft v. Iqbal*,
 556 U.S. 662 (2009)...............................................................................................8, 17

*Barrett v. O'Reilly Auto., Inc.*,
 112 F.4th 1135 (8th Cir. 2024) ..............................................................................2, 11

*Bell Atl. Corp. v. Twombly*,
 550 U.S. 544 (2007)......................................................................................................8

*Bennett v. Wimberly*,
 2020 WL 3645973 (D.S.C. July 6, 2020) ..................................................................18

*Cotter v. Matthews Int'l Corp.*,
 2023 WL 9321285 (E.D. Wis. Aug. 9, 2023)............................................................15

*Dixon v. Washington*,
 819 F. App'x 95 (3d Cir. 2020)..................................................................................18

*England v. DENSO Int'l Am., Inc.*,
 2023 WL 4851878 (E.D. Mich. July 28, 2023)....................................................13, 15

*Est. of Smith v. Raytheon Co.*,
 573 F. Supp. 3d 487 (D. Mass. 2021) ..........................................................................2

*Fifth Third Bancorp v. Dudenhoeffer*,
 573 U.S. 409 (2014) ....................................................................................................8

*Garnick v. Wake Forest Univ. Baptist Med. Ctr.*,
 629 F. Supp. 3d 352 (M.D.N.C. 2022)......................................................................16

*Hooker v. Tunnel Gov't Servs.*,
 447 F. Supp. 3d 384 (D. Md. 2020) .............................................................................3

*Hughes v. Nw. Univ.*,
 595 U.S. 170 (2022)......................................................................................................8

*Inspiration Yacht Charters, Inc. v. Inspiration Yacht Charters, II, Inc.*,
2010 WL 5014371 (S.D. Fla. Dec. 2, 2010) ...................................................................17

*Jacobs v. Verizon Commc'ns, Inc.*,
2017 WL 8809714 (S.D.N.Y. Sept. 28, 2017) ..............................................................16

*Johnson v. Providence Health & Servs.*,
2018 WL 1427421 (W.D. Wash. Mar. 22, 2018) ...........................................................3

*Jordan v. MEBA Pension Tr.*,
2021 WL 4148460 (D. Md. Sept. 10, 2021) ...................................................................3

*Kalra v. Adler Pollock & Sheehan, P.C.*,
2022 WL 788507 (D. Conn. Mar. 15, 2022) ................................................................16

*Kannapien v. Quaker Oats Co.*,
507 F.3d 629 (7th Cir. 2007) .......................................................................................16

*Meiners v. Wells Fargo & Co.*,
898 F.3d 820 (8th Cir. 2018) ..................................................................................11, 12

*Probst v. Eli Lilly & Co.*,
2023 WL 1782611 (S.D. Ind. Feb. 3, 2023) ...........................................................13, 14

*Sigetich v. Kroger Co.*,
2023 WL 2431667 (S.D. Ohio Mar. 9, 2023)...................................................... 2, 13, 14

*Singh v. Deloitte LLP*,
2023 WL 4350650 (S.D.N.Y. July 5, 2023) .................................................................13

*Six v. Generations Fed. Credit Union*,
891 F.3d 508 (4th Cir. 2018) ........................................................................................3

*Smith v. CommonSpirit Health*,
37 F.4th 1160 (6th Cir. 2022) .....................................................................................11

*Pension Ben. Guar. Corp. ex rel. St. Vincent Cath. Med. Ctrs. Ret. Plan v.
Morgan Stanley Inv. Mgmt. Inc.*,
712 F.3d 705 (2d Cir. 2013) ..........................................................................................9

*Tullgren v. Hamilton*,
2023 WL 2307615 (E.D. Va. Mar. 1, 2023) .................................................................16

*Veney v. Wyche*,
293 F.3d 726 (4th Cir. 2002) ........................................................................................8

iii

## **Other Authorities**

Federal Rule of Civil Procedure 12(b)(6) ........................................................................... 1

Janjaap Weeda, *et al.*, *An Empirical Analysis of the Drivers of Recordkeeping*
    *Cost in U.S. Defined Contribution Plans* ................................................................... 2, 12

**MOTION STATEMENT**

Pursuant to Federal Rule of Civil Procedure 12(b)(6), Defendants Sonoco Products Company ("Company"), the Board of Directors of Sonoco Products Company ("Board"), and the Employee Benefits Council[1] ("Council") of the Sonoco Retirement and Savings Plan (collectively, "Sonoco") respectfully move this Court to dismiss with prejudice Plaintiff Daniel Steen's Second Amended Complaint (Dkt. 40) ("SAC").

**INTRODUCTION**

This Court previously ruled that although Plaintiff's First Amended Complaint contained "broad allegations of excessive fees and fiduciary failures, its lack of concrete, specific comparator details, and factual context regarding the services provided and fees paid falls short under the governing standard."  Dkt. 38 at 9–10.  Steen was given the opportunity to amend his Complaint (for a second time) to address these facial deficiencies.  The Court even provided a road map for Steen to remedy his pleading: to survive dismissal, Steen had to "provide adequate details about the comparator plans' service levels, fee structures, or administrative arrangements to establish meaningful, like-for-like comparisons."  *Id.* at 9.

Despite having thousands of pages of Plan documents in his possession for nearly a year (*see* Spruill Decl., ¶ 18),[2] Steen's Second Amended Complaint does not allege any new facts

---

[1]  Although Steen names the Employee Benefits Committee in his Second Amended Complaint, this Committee was dissolved in June 2022 and reconstituted as the Employee Benefits Council. Declaration of Sarah Spruill filed herewith ("Spruill Decl.") ¶ 1, Ex. A at SONOCO001325.

[2] Steen submitted a request to Sonoco requesting production of certain Plan documents which Sonoco responded to on August 5, 2024.  A copy of a letter from Steen's counsel letter to Sonoco— dated July 2, 2024—is attached as Ex. B.  A copy of Sonoco's August 5, 2024 response letter is attached as Ex. C.  Enclosed within Sonoco's response letter was a Sharefile link that contained five categories of documents, including copies of: the Summary Plan Description and Plan Form 11-K, Plan Summary and Plan Documents, agreements between Sonoco and Empower, Plan Forms 5500, documents relating to the Council, and Plan investment documents.  Many of the documents that were provided to Steen are relied upon, referenced, and/or cited in the Complaint

regarding specific comparator plan details. Instead, Steen disingenuously claims he "does not have access" to the documents necessary to understand the Plan (SAC ¶ 140) and instead points to general *industry* metrics (*see id.* ¶¶ 62–76), hoping that this Court will **infer** facts he is admittedly incapable of pleading.[3] Steen also recycles his argument that recordkeeping services are all the same and should be treated as commodities, and that therefore—Steen claims—no apples-to-apples comparison based on specific plan costs and services need be pled. SAC ¶ 119. This Court has already rejected this argument.[4] Steen's own cited industry studies[5] as well as other courts have done the same.[6]

At bottom, Steen's Second Amended Complaint fails to make a single, specific factual allegation between its comparator plans and Sonoco's plan. It repeats verbatim language this Court has already deemed to be insufficient and admits its own inability to cure deficiencies, thereby

---

but are not attached. *See e.g.*, SAC ¶ 9 (describing the scope of the Plan); ¶ 18 (discussing the Council's scope of duties); ¶ 169 (detailing total recordkeeping fees per participant). Steen concedes that most of these documents are "publicly available." *See id.* at ¶ 54.

[3] Steen cannot plead ignorance of these Plan documents—which rebut his claims—solely for the benefit of a factual inference from this Court. *See Est. of Smith v. Raytheon Co.*, 573 F. Supp. 3d 487, 498 (D. Mass. 2021) ("Although Plaintiffs assert they have not received the Plan documents, the relief they seek is governed by the Plan and is dependent upon its language. Thus, their Complaint is necessarily linked to the Plan. I will therefore consider the Plan document, as attached to [Defendant's] motion to dismiss.").

[4] *See* Dkt. 38 at 9 ("Plaintiff's assertion that 'there are no material differences in the [recordkeeping and administration] services provided to plans as large as the Sonoco Plan and the comparable plans' (*Id.* ¶ 97; *see id*. ¶ 53) is conclusory and insufficient.").

[5] Janjaap Weeda, *et al.*, *An Empirical Analysis of the Drivers of Recordkeeping Cost in U.S. Defined Contribution Plans*, *CEM Benchmarking* (Aug. 2024), at 3 (stating the wide "dispersion [of recordkeeping costs] suggests that recordkeeping today is *not* a 'commodity' service").

[6] *See Sigetich v. Kroger Co.*, 2023 WL 2431667, at *9 (S.D. Ohio Mar. 9, 2023) (finding allegations inadequate where plaintiffs failed to plausibly plead that fees were excessive relative to services rendered"); *Barrett v. O'Reilly Auto., Inc.*, 112 F.4th 1135, 1139 (8th Cir. 2024) (analogizing the comparison of distinguishable plans to "trying to compare the costs of two otherwise identical grocery baskets, except one contains filet mignon and the other does not").

2

acknowledging flaws in its purported analysis. Accordingly, this Court should dismiss Steen's Second Amended Complaint with prejudice.

## **RELEVANT FACTS**

Since its inception, and for over 125 years, Sonoco—a global packing solutions company—has proudly called Hartsville, South Carolina its home. *See id.* at ¶ 17. Sonoco employs thousands of South Carolinians and is the largest employer in the state in terms of revenue. Sonoco provides numerous benefits to its thousands of employees, including retirement benefits.

From 2018 to 2022, one of the retirement benefits Sonoco offered its employees was the Plan—an employer-sponsored, individual account, defined contribution plan. *Id.* at ¶¶ 2, 24–26. Sonoco employees were eligible to participate in the Plan and make contributions from their pretax annual compensation, up to certain limits. *See id.* at ¶ 3. In addition to these employee contributions, Sonoco contributed (and continues to contribute) $0.50 for every $1.00 employees save on a before-tax or Roth 401(k) basis, up to 4% of their eligible pay—for a maximum company matching contribution equal to 2% of pay. Spruill Decl. ¶ 4, Ex. D at SONOCO000016.[7] This

---

[7] "It is well established that a court may consider documents . . . attached to the motion to dismiss, so long as they are integral to the complaint and authentic." *Six v. Generations Fed. Credit Union*, 891 F.3d 508, 512 (4th Cir. 2018) (quotations omitted). Consequently, the Court can consider Exs. A–Q attached to this motion because they are either referred to and/or cited in the Complaint, but not attached, and are central to Steen's claims or are documents that are publicly available and subject to judicial notice. *See, e.g.*, *Jordan v. MEBA Pension Tr.*, 2021 WL 4148460, at *7 (D. Md. Sept. 10, 2021) ("[A] court may properly consider ERISA plan documents on motion to dismiss.") (citing *Hooker v. Tunnel Gov't Servs.*, 447 F. Supp. 3d 384, 391 (D. Md. 2020)); *Johnson v. Providence Health & Servs.*, 2018 WL 1427421, at *3 (W.D. Wash. Mar. 22, 2018) (granting, in part, motion to dismiss, and considering Form 5500s, fee disclosure summaries, amendments to recordkeeper agreement with Fidelity, fund prospectuses, and BrightScope/ICI Report). "The Court will consider information from these documents insofar as they contradict allegations from the complaint." *Id.*

results in Sonoco making significant contributions to its employees' retirement savings. *See e.g.*, *id.* ¶ 5, Ex. E at SONOCO001242 (noting Sonoco contributed a total of $22,476,487).

### A.     Sonoco Consistently Negotiated Lower Recordkeeper Fees

Empower Annuity Insurance Company (formerly known as Great-West Life & Annuity Insurance Company) ("Empower") has served as the Plan's recordkeeper during the entirety of the allegedly relevant time period. SAC ¶ 28; Spruill Decl. ¶ 6, Ex. F. During that time, publicly available records demonstrate that Sonoco has consistently evaluated its recordkeeping fees and negotiated reductions. Indeed, since engaging Empower as its recordkeeper, Sonoco has amended the Services Agreement with Empower seven times. Spruill Decl. ¶ 6, Ex. F at SONOCO000892; -910; -914; -918; -921; -923; -928.

Based on the same documents referenced by Steen's Second Amended Complaint, these amendments resulted in an overall decline in the amount of fees paid to Empower for its administrative services in accordance with industry best practices. For example, Sonoco and Empower amended (for the sixth time) the Services Agreement by lowering the contractual annual per participant recordkeeper fee to $50, effective January 2019. Spruill Decl. ¶ 6, Ex. F at SONOCO000923. In 2022, the Services Agreement was amended yet again to further reduce the recordkeeper fee to $42 per participant, with an additional $10 per participant to be deposited into the Plan's ERISA account. *Id.* at -928. Indeed, the following chart reflects the steady decline in the per participant recordkeeper fees paid during the alleged relevant time period:[8]

---

[8]   Spruill Decl. ¶¶ 5, 8–11, Exs. E, H–K.



**B.     The Council Actively Monitored The Plan And Offered Numerous Investment Options**

During the alleged relevant time period, the Plan also offered a wide range of investment options.  The Council, in accordance with its Investment Policy, employed robust review and approval procedures for selecting, monitoring, and removing investment options.  Spruill Decl. ¶ 7, Ex. G, at SONOCO001361–1366.  The Plan investment options included common stock and mutual funds, collective trusts, and stable value funds.  *Id.* ¶¶ 5, 8–11, Exs. H, at SONOCO001075; Ex. I, at SONOCO001117; Ex. J, at SONOCO001173; Ex. K, at SONOCO001223; Ex. E, at SONOCO001273.

The Council actively supervised and managed Plan investment options, removing certain options and adding others.  *Id.* ¶ 7, Ex. G at SONOCO001361–1366; *compare id.* ¶ 11, Ex. K at SONOCO001223, *with id.* ¶ 9, Ex. I at SONOCO001117 (*e.g.*, in 2021, Mercer funds added as investment options).

5

**C.     Steen's Second Amended Complaint Does Not Remedy The Factual Deficiencies Noted by the Court**

As noted above, the Court provided a road map for Steen to remedy his pleading: to survive dismissal, Steen had to "provide adequate details about the comparator plans' service levels, fee structures, or administrative arrangements to establish meaningful, like-for-like comparisons." Dkt. 38 at 9.  Instead of doing so, Steen's Second Amended Complaint makes no new allegations regarding its comparator plans to establish meaningful like-for-like comparisons.  In fact, the allegations of the First Amended Complaint and the Second Amended Complaint are nearly identical regarding comparator plans.  For example, when comparing Steen's allegations concerning the Children's Medical Center of Dallas Employee Savings Plan in the different complaints, besides formatting changes, Steen only made two changes (as reflected by the bolded text in the chart):

| Children's Medical Center of Dallas Employee Savings Plan 403(B) ("CMC") ||
|---|---|
| **First Amended Complaint ¶ 86(a)** | **Second Amended Complaint ¶ 150(a)** |
| The reliable estimate of $36/pp is derived from publicly available Form 5500 disclosure data. The CMC plan is a meaningful benchmark because at the end of 2018 the CMC plan had around 9,356 participants, slightly less than the 9,755 participants in the Sonoco Plan. The fact that the Sonoco Plan had around 399 more participants than the CMC plan does not render the CMC plan a meaningless comparable plan. On the contrary, in terms of the number of participants and in relation to the Sonoco Plan, the CMC plan is one of the most similar defined contribution plans governed by ERISA. The costs to a recordkeeper for providing RKA services to a plan with more than 9,000 participants are driven primarily by the number of participants. | The reliable estimate of $36/pp is derived from publicly available Form 5500 disclosure data. The CMC plan is a meaningful benchmark because at the end of 2018 the CMC plan had around 9,356 participants, slightly less than the 9,755 participants in the Sonoco Plan. The fact that the Sonoco Plan had around 399 more participants than the CMC plan does not render the CMC plan a meaningless comparable plan. On the contrary, in terms of the number of participants and in relation to the Sonoco Plan, the CMC plan is one of the most similar defined contribution plans governed by ERISA. The costs to a recordkeeper for providing RKA services to a plan with more than 9,000 participants are driven primarily by the number of participants. |
| There are no material differences in the RKA services provided to plans as large as both the | There are no material differences in the RKA services provided to plans as large as both the |

6

| | |
|---|---|
| CMC plan and the Sonoco Plan and any service differentials cannot explain the disparity between the fees paid by the CMC plan and the fees paid by the Sonoco Plan. For example, the disparity of the $36/pp Total RKA rate for the CMC plan's fee compared to the Total RKA effective rate of $65/pp paid by the Sonoco Plan represents over $280,000.00 annually and would conservatively represent more than thousands of hours of RKA services in one year provided by employees of the recordkeeper. As described above, there are no special or different RKA services provided to any comparable plan that would reasonably warrant incremental additional fees of over $280,000.00 for similar commoditized RKA services. Therefore, if the CMC plan can obtain a Total RKA fee of $36/pp with 9,356 participants, then the Sonoco Plan, with 9,755 participants at the end of 2018, should be able to obtain a Total RKA fee of around $36/pp, or lower, since it is axiomatic that, all else being equal, a plan with more participants can obtain a lower per participant Total RKA fee rate. The massive disparity between the Total RKA fees paid by the CMC plan and the Sonoco Plan's effective Total RKA fee of around $65/pp, viewed holistically and in conjunction with the evidence of the fees paid by other comparable plans, supports the reasonable inference that the Sonoco Plan paid excessive and unreasonable RKA fees and the Sonoco Plan's process was not prudent. | CMC plan and the Sonoco Plan and any service differentials cannot explain the disparity between the fees paid by the CMC plan and the fees paid by the Sonoco Plan. For example, the disparity of the $36/pp Total RKA rate for the CMC plan's fee compared to the Total RKA effective rate of $65/pp paid by the Sonoco Plan represents over $280,000.00 annually and would conservatively represent ~~more than~~ thousands of **additional** hours of RKA services in one year provided by employees of the recordkeeper. As described above, there are no special or different RKA services provided to any comparable plan that would reasonably warrant incremental additional fees of over $280,000.00 for similar commoditized RKA services. Therefore, if the CMC plan can obtain a Total RKA fee of $36/pp with 9,356 participants, then the Sonoco Plan, with 9,755 participants at the end of 2018, should be able to obtain a Total RKA fee of around $36/pp, or lower, since it is axiomatic that, all else being equal, a plan with more participants can obtain a lower per participant Total RKA fee rate. The massive disparity between the Total RKA fees paid by the CMC plan and the Sonoco Plan's effective Total RKA fee of around $65/pp, viewed holistically and in conjunction with the evidence of the fees paid by other comparable plans, supports the reasonable inference that the Sonoco Plan paid excessive and unreasonable RKA fees and the Sonoco Plan's process was not prudent. |

The changes to the allegations regarding the other comparator plans are even more minimal.

Likewise, Steen's Second Amended Complaint repeatedly ignores this Court's prior rulings, recycling rejected theories and refusing to provide any additional factual support for his claims. Steen even admits he cannot provide the specific factual details requested by the Court.

| Court's Order (Dkt. 38) | Steen's Second Amended Complaint (Dkt. 40) |
|---|---|
| **p.8:** "[C]ourts have consistently held that ERISA does not impose a fiduciary duty to | **SAC ¶ 124:** "Defendants failed to solicit bids for recordkeeping services at reasonable intervals, |

| conduct regular competitive bidding for recordkeeping services." | which, in turn, has caused the Sonoco Plan to overpay for recordkeeping." |
|---|---|
| **p.9:** "Plaintiff does not provide adequate details about the comparator plans' service levels, fee structures, or administrative arrangements to establish meaningful, like-for-like comparisons." | **SAC ¶ 143:** "Each of these comparable plans was chosen because they have transparent fee structures[.]" |
| **p.9:** "Plaintiff's assertion that 'there are no material differences in the . . . services provided to plans as large as the Sonoco Plan and the comparable plans' is conclusory and insufficient." | **SAC ¶ 168:** ". . . there are no material differences in the RKA services provided to plans as large as the Sonoco Plan and the comparable plans." |
| **p.16:** "the FAC contains no specific, non-conclusory factual allegations suggesting an independent failure to monitor by the Board beyond bare assertions." | **SAC ¶¶ 193–198:** Identical allegations to First Amended Complaint.<br><br>**SAC ¶ 53:** "Plaintiff cannot allege more specific factual allegations." |

## **LEGAL STANDARD**

Motions to dismiss are an "important mechanism for weeding out meritless claims," and district courts are charged with carefully reviewing complaints in ERISA cases to separate the "plausible sheep from the meritless goats." *Fifth Third Bancorp v. Dudenhoeffer*, 573 U.S. 409, 425 (2014). The *Iqbal*/*Twombly* plausibility pleading standard is applied in ERISA cases. *See Hughes v. Nw. Univ.*, 595 U.S. 170, 177 (2022).

To survive a motion to dismiss, plaintiffs must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "Where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not shown—that the pleader is entitled to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (citation modified). A court need not accept "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Veney v. Wyche*, 293 F.3d 726, 730 (4th Cir. 2002) (citation modified). Further, a court need not accept

"legal conclusions couched as facts." *Alive Church of the Nazarene, Inc. v. Prince William Cnty.*, 59 F.4th 92, 101 (4th Cir. 2023) (quotations removed).

## ARGUMENT

I.     **STEEN'S GENERALIZED AND CONCLUSORY ALLEGATIONS FAIL TO ESTABLISH A CLAIM FOR BREACH OF THE FIDUCIARY DUTY OF PRUDENCE**

     A.     **Steen Fails to Plausibly Allege That the Plan's Administrative and Recordkeeping Fees Were Excessive**

Steen's allegations fail because—despite the Court's invitation to do so—he offers no *Sonoco*-specific facts to support his conclusory allegations of imprudence.

In pleading a breach of the duty of prudence, it is not "sufficient to show that better investment opportunities were available at the time of the relevant decisions." *Pension Ben. Guar. Corp. ex rel. St. Vincent Cath. Med. Ctrs. Ret. Plan v. Morgan Stanley Inv. Mgmt. Inc.*, 712 F.3d 705, 718 (2d Cir. 2013). As this Court has already held, relying "on Form 5550 data to compare the Plan's costs" *without* providing "adequate details . . . to establish like-for-like comparisons" is grounds for dismissal. Dkt. 38 at 9. Steen has done nothing to remedy this error.

*First*, Steen's proffered comparison of the Plan's Total RKA fee rates (*see* SAC ¶ 149) is *nearly identical* to what this Court deemed insufficient to withstand dismissal. For example, Steen bases his allegation that the "Sonoco Plan paid excessive fees" (SAC ¶ 129) on the same public Form 5500 filings of *five* supposedly comparable plans from 2018. *See id.* ¶¶ 150, 169. Indeed, the allegations about each of the five comparator plans in the Second Amended Complaint are virtually identical to the allegations in Steen's First Amended Complaint. *Compare* Dkt. 21 ¶ 86 *with* SAC ¶ 150 (repeating nearly verbatim his "comparison" of the plans). As a result, there is no factual basis to make meaningful like-for-like comparisons.

9

*Second*, Steen still has not alleged the complete or total recordkeeper costs for his five "comparator" plans.  In fact, he admits that he does not have this information.  *See* SAC ¶ 140.  Rather, the Form 5500s Steen relies on for each of the comparator plans make clear that a significant amount (if not the majority) of the recordkeeping expenses were paid for *by the plan sponsor* rather than by the plan itself.

| Alleged Comparator | Payment of Administrative Expenses |
|---|---|
| Vibra Healthcare<br><br>*See* Spruill Decl. ¶ 12, Ex. L at 34 | "*Certain expenses of maintaining the Plan are paid **directly by the Plan sponsor** and are excluded from these financial statements*.  Fees related to the administration of notes receivable from participants and the distribution of benefit payments are charged directly to the participant's account and are included in administrative expenses." |
| Southern California Permanente<br><br>Spruill Decl. ¶ 13, Ex. M at 32 | "Expenses of maintaining the Plan including the fees paid to accountants, legal professionals, and other plan service providers may be paid by the Plan.  *During the current year, these fees were paid **by the Plan Sponsor***.  Investment advisory fees and other participant-initiated consulting fees are allocated based on participants account balances and are included in administrative expenses." |
| CMC Dallas 403(b)<br><br>Spruill Decl. ¶ 14, Ex. N at 38 | "Administrative expenses that are not paid by Children's Health are paid for by the Plan." |
| Ralph Lauren<br><br>Spruill Decl. ¶ 15, Ex. O at 32 | "Administrative expenses of the Plan, except for loan processing and redemption fees, if applicable, are *paid by the Plan Sponsor* or the Trust as provided for in the Plan document.  *Expenses paid by the Plan Sponsor **are excluded from the Plan's financial statements**.*" |
| Republic National<br><br>*Spruill Decl.* ¶ 16, Ex. P at 30 | "Participants are charged with specific transaction charges such as loan origination and distribution fees as well as certain plan administration fees including audit and investment advisory fees.  These plan administration fees are allocated to participants…  *In 2018, all other administrative expenses **were paid by the Company**.*" |

Because the portion of the recordkeeping fees paid by the plan sponsors are not reported on the Form 5500, the Form 5500s for the alleged comparator plans do not show the total recordkeeping

fees.[9]  Rather, they **only show a portion** of what the recordkeepers charged: the amount collected

from plan assets.  By contrast, Sonoco's own Form 5500 provides a more complete picture of

recordkeeping fees because these expenses are paid for by the Plan.

| Sonoco Plan<br><br>Spruill Decl. ¶ 8, Ex. H, at 31. | "Most trust and custodial expenses and investment management fees are paid by the Plan…Certain trust and custodial expenses and investment management fees are paid by the Company in accordance with the plan documents.  In addition, the Plan pays certain recordkeeping and other expenses which are included in administrative expenses . . ." |
|---|---|

Steen's apples-to-oranges comparisons of comparator plans based on incomplete

information about the total amount of recordkeeping fees actually charged represents an

insurmountable flaw in his pleading.  *See, e.g.*, *Barrett v. O'Reilly Auto., Inc.*, 112 F.4th 1135,

1139 (8th Cir. 2024).  As courts have made clear, when a plaintiff seeks to bring a breach of

prudence claim alleging excessive recordkeeping fees, it is critical that any comparison of

recordkeeping fees examines **truly comparable plans**.  *See Smith v. CommonSpirit Health*, 37

F.4th 1160, 1169 (6th Cir. 2022) (affirming dismissal because the plaintiff "ha[d] not pleaded that

the services [covered by defendants] [were] equivalent to those provided by the plans comprising

the average in the industry publication that she cites") (internal quotations omitted)).

Put simply, the Court cannot infer a flawed decisionmaking process simply because there

*might* be "cheaper alternative [options] with *some* similarities [that] exist in the marketplace."

*Meiners v. Wells Fargo & Co.*, 898 F.3d 820, 823 (8th Cir. 2018) (affirming dismissal of ERISA

fiduciary claim alleging that defendants breached their duty by keeping high-fee mutual funds in

the plan's investment portfolio); *cf.* SAC ¶¶ 60 n.12, 110.  "To show that 'a prudent fiduciary in

like circumstances' would have selected a different fund based on the cost or performance of the

---

[9]  *See* Spruill Decl. ¶ 17, Ex. Q at 24 ("Payments made by the plan sponsor, which are not reimbursed by the plan, are not subject to Schedule C reporting requirements even if the sponsor is paying for services rendered to the plan.").

selected fund, a plaintiff must provide a ***sound basis for comparison***—a meaningful benchmark." *Meiners,* 898 F.3d at 822 (emphasis added) (citation omitted).

Steen fails to provide any such benchmark. While he baldly alleges that Sonoco could have found a recordkeeper who charged $28-$38 per participant in 2018 (SAC ¶ 169), he offers ***no supporting facts*** to substantiate this contention.

### B.     Steen's Allegations That There are No Material Differences in Recordkeeping Services Are Unsupported

Because Steen admittedly cannot allege a meaningful benchmark supported by like-for-like comparisons, he attempts to sidestep this requirement by claiming "there are no material differences in the [recordkeeping and administration] services provided to plans as large as the Sonoco Plan and the comparable plans." SAC ¶ 168; *see also id.* at ¶ 81. But the Court has already determined that this claim "is conclusory and insufficient." Dkt. 38 at 9. Steen's own cited industry studies have likewise rejected his theory that recordkeeping services are a commodity.

For example, Steen cites the CEM Benchmarking study for the proposition that "plan fiduciaries that follow a prudent process understand that the RKA services should be viewed as a commodity service." SAC ¶ 138. But the study itself says the opposite, stating that although one "key decision maker[]" suggested recordkeeping is a commodity service, the wide "dispersion [of recordkeeping costs] suggests that recordkeeping today is *not* a 'commodity' service." Janjaap Weeda, *et al.*, *An Empirical Analysis of the Drivers of Recordkeeping Cost in U.S. Defined Contribution Plans*, *CEM Benchmarking* (Aug. 2024), at 3.

Courts have similarly rejected the claim that recordkeeping services are all the same. For example, in *Sigetich*, the court dismissed the plaintiff's recordkeeping allegations that mirror Steen's allegations—in some instances nearly word-for-word. 2023 WL 2431667 at *9. There, the plaintiff argued that for "mega plans," "any minor variations in [recordkeeping services have]

little to no material impact on the fees charged by recordkeepers." *Id.* (internal quotations omitted); *cf.* SAC ¶ 109 (regurgitating nearly identical language used in previous ERISA complaints). The court rejected this theory as "not plausible" after taking "a careful, context-sensitive scrutiny of the comparable plans." *Sigetich*, 2023 WL 2431667, at *9. Looking at the Form 5500s, the court noted that there *were*, in fact, "variations in [the] reported services for the comparable plans." *Id.* And because of these variations, the court concluded that "the differences in costs and the differences in services reported among the comparable plans suggest that even minor variations in services impact per participant recordkeeping fees." *Id.*

Similarly, in *Singh v. Deloitte LLP*, the court found the "conclusory allegations that nearly all recordkeepers in the marketplace offer the same range of services and numerous recordkeepers in the marketplace are capable of providing a high level of service" to be unpersuasive. 2023 WL 4350650, at *4 (S.D.N.Y. July 5, 2023) (internal quotations omitted), *aff'd*, 123 F.4th 88 (2d Cir. 2024). Other courts have reached the same conclusion. *See Probst v. Eli Lilly & Co.*, 2023 WL 1782611, at *10 (S.D. Ind. Feb. 3, 2023) (collecting cases) (concluding plaintiff's allegation "that all mega plans receive nearly identical recordkeeping services and that any difference in services was immaterial to the price of those services" to be "wholly conclusory"); *England v. DENSO Int'l Am., Inc.*, 2023 WL 4851878, at *3 (E.D. Mich. July 28, 2023) (rejecting claim "that mega plans receive nearly identical recordkeeping services and that any difference in services is immaterial to the price of those services[.]") (collecting cases), *reconsideration denied sub nom. England v. Denso Int'l Am.*, 2024 WL 1832990 (E.D. Mich. Mar. 27, 2024).[10]

---

[10] The *Probst* court also concluded it was "obvious that relying on the Form 5500s as the source for the comparator plan information [was] problematic for numerous reasons," the least of which that it provided little value to what constitutes a true apples-to-apples comparison. 2023 WL 1782611, at *12.

Here, Steen's allegation that all recordkeeping services are the same suffers from the same deficiency presented in *Probst* and *Sigetich*: Steen has offered **no** facts to support its conclusory allegation that there are "no material differences in the RKA services provided" between "the Sonoco Plan and the comparable plans."  SAC ¶ 168.

In addition, as in *Probst* and *Sigetich*, the plans have different service codes.  *See, e.g.*, *Probst*, 2023 WL 1782611, at *11 (rejecting plaintiff's argument that differences in service codes did not matter); *Sigetich*, 2023 WL 2431667, at *9 (finding a failure to state claim because of variations in services provided by comparable plans).  As demonstrated by the table below, at least three out of the five comparator plans have starkly different service codes, seriously undercutting the possibility of any apples-to-apples comparison here.  *Compare, e.g.*, Spruill Decl. ¶ 8, Ex. H at SONOCO001038 (service codes 15 (Brokerage), 37 (Participant loan processing), 50 (Direct payment from the plan), 64 (Recordkeeping fees)), *with id.* ¶ 12, Ex. O at Schedule C, p.3 (reporting 12 more distinct service codes than Sonoco).

| Sponsor | Year | Service Codes |
|---|---|---|
| **Sonoco Plan** | 2018 | 15/37/50/64 |
| **Ralph Lauren Corp. 401K** | 2018 | 15/21/25/28/33/37/ 38/49/50/52/55/57/ 59/62/64/65 |
| **So. Cal. Permanente Med. Grp.** | 2018 | 15/25/26/37/38/52 |
| **Children's Med. Ctr. of Dallas** | 2018 | 37/38/50/60/64/65 |

Moreover, with over $1 billion in assets, the Sonoco Plan also has significantly more assets than the comparator plans—the differences being measured in terms of hundreds of millions. These are not slight differences.  They are apples-to-oranges comparisons.  *See England*, 2023 WL 4851878, at *4 (finding that the differences between the defendant's plan with over $1 billion in

14

assets and others with less than $500 million "raise[d] serious doubt as to the plausibility of how the purported comparator plans are indeed comparable.") (quotations omitted)).

| Sponsor | Year | Assets |
|---|---|---|
| Sonoco Plan | 2018 | 1,029,812,000 |
| So. Cal. Permanente Med. Grp. | 2018 | 773,795,904 |
| Republic National 401K | 2018 | 692,729,158 |
| Ralph Lauren Corp. 401K | 2018 | 588,340,658 |
| Children's Med. Ctr. of Dallas | 2018 | 358,303,511 |
| Virbra Healthcare Ret. Plan | 2018 | 103,998,444 |

Lastly, even if all recordkeeping services were the same and the Court accepted Steen's apples-to-oranges comparator plan analysis, his duty of prudence claims would fail because other courts analyzing similar claims have found recordkeeping differences larger than those alleged here to fail to state a claim. *See, e.g.*, *Cotter v. Matthews Int'l Corp.*, 2023 WL 9321285, at *3–5 (E.D. Wis. Aug. 9, 2023), *report and recommendation adopted*, 2024 WL 218417, at 1 (E.D. Wis. Jan. 19, 2024) (finding that plaintiff did not state a duty of prudence claim even though defendant had an average fee of $124 compared to plaintiff's proposed alternative fee of $49); *Albert v. Oshkosh Corp.*, 47 F.4th 570, 579 (7th Cir. 2022) (holding that, even though comparator plans paid on average between $32 to $45 and during same time period, defendant paid $87, plaintiff's complaint simply did not provide the kind of context that could move this claim from possibility to plausibility under *Twombly* and *Iqbal*).

## II.    STEEN'S MONITORING CLAIM FAILS BECAUSE IT IS DEVOID OF ANY FACTUAL SUPPORT AND CANNOT SURVIVE AS A STANDALONE CLAIM

Steen's second claim for relief—that the Company and the Board breached their fiduciary monitoring duties (SAC ¶¶ 192–98)—is wholly derivative of his other claim, and thus fails as a matter of law.

"A claim for the failure to monitor derives from and depends on an underlying breach of fiduciary duty cognizable under ERISA. Thus, the duty to monitor claim is only as broad as the

15

surviving prudence claim and is otherwise dismissed." *Garnick v. Wake Forest Univ. Baptist Med. Ctr.*, 629 F. Supp. 3d 352, 367 (M.D.N.C. 2022) (quotations omitted); *see*, *e.g.*, *Tullgren v. Hamilton*, 2023 WL 2307615, at *8 (E.D. Va. Mar. 1, 2023) ("Plaintiff's claim alleging failure to monitor[] . . . is wholly derivative of the underlying fiduciary breach claim. Because the Court finds Plaintiff's Amended Complaint deficient with respect to the fiduciary breach claim, . . . the court grants Defendants' motion to dismiss.").

The Court dismissed Steen's prior allegations based on "process-based failures" because they did not contain sufficient "specific factual details." Dkt. 38 at 10, n.4. Steen attempts to get around this ruling claiming that it is "reasonable to infer" that Defendants' monitoring was imprudent based on "errors" in the Plan's Form 5500s. SAC ¶¶ 45–50; *see also id.* ¶ 172. Clerical (or even negligent) errors in the Form 5500s, however, are insufficient to demonstrate a breach of the duty to monitor. *See, e.g.*, *Kannapien v. Quaker Oats Co.*, 507 F.3d 629, 639 (7th Cir. 2007) ("An ERISA plan fiduciary does not breach its fiduciary duties under ERISA by merely providing negligent misinformation about the contours of a Plan."); *Jacobs v. Verizon Commc'ns, Inc.*, 2017 WL 8809714, at *15 (S.D.N.Y. Sept. 28, 2017) (collecting cases) (dismissing claim based on "Plaintiff's argument that Defendants breached their fiduciary duties by failing to disclose information in, or making misrepresentations in, a Form 5500."); *cf. Kalra v. Adler Pollock & Sheehan, P.C.*, 2022 WL 788507, at *4 (D. Conn. Mar. 15, 2022) ("Negligence alone is insufficient to support a claim of a breach of fiduciary duty."); *Inspiration Yacht Charters, Inc. v. Inspiration Yacht Charters, II, Inc.*, 2010 WL 5014371, at *16 (S.D. Fla. Dec. 2, 2010) ("[A] showing of mere negligence is not enough to demonstrate a breach of fiduciary duty."), *aff'd*, 488 F. App'x 408 (11th Cir. 2012).

16

Steen's references to uncited studies by the "Callan Institute," "USI Consulting," "CEM Benchmarking" and "Encore Fiduciary (formerly Euclid") are equally unavailing. *See* SAC ¶¶ 67–71, 102, 107, 144, 158–59, nn. 15–16. Industry surveys purportedly suggesting that "[m]any plan fiduciaries have deficient processes for monitoring plan fees in compliance with the standard of care" (SAC ¶¶ 67–71) do not state plausible facts as to whether the ***Defendants in this case*** were deficient in this respect. Similarly, Steen's claim that these studies establish that when "prudent fiduciaries go through [a benchmarking] process, it is all but guaranteed they can achieve a lower fee[]"—based on industry-wide survey citing ***average cost savings*** from a wide variety of plans in 2022 (*see id.* ¶¶ 99–102)—is irrelevant to whether the Defendants in this case, failed to properly monitor recordkeeping fees in 2018. Even Steen admits this method of implying a hypothetical fee rate of $20 per participant based on a nationwide study is "imperfect." *Id.* ¶ 108.

At bottom, Steen's speculative claims that Defendants failed to properly monitor recordkeeping fees fail to state plausible claims under the applicable pleading standard. *See Iqbal*, 556 U.S. at 678.

## CONCLUSION

Given Steen's failure to cure the deficiencies previously identified in the Court's Order, his Second Amended Complaint should be dismissed with prejudice.[11]

---

[11] "When, as here, 'a party is granted leave to amend but fails to address the problem, that party should not be surprised' when the Court does not grant further opportunities to amend." *Dixon v. Washington*, 819 F. App'x 95, 96 (3d Cir. 2020) (citation omitted); *see also Bennett v. Wimberly*, 2020 WL 3645973, at *1 (D.S.C. July 6, 2020) (dismissing claims with prejudice based on "Plaintiff's failure to cure the deficiencies previously identified by the Magistrate Judge"); *Adkins v. Bank of N.Y. Mellon*, 2017 WL 2215131, at *1 (D. Md. May 19, 2017) (dismissing claims with prejudice because plaintiff "failed to address those deficiencies in her Amended Complaint, despite having ample notice and an opportunity to correct them").

DATED:  July 25, 2025

*/s/* Sarah P. Spruill

Sarah P. Spruill (Fed. ID No. 8054)
HAYNSWORTH SINKLER BOYD, P.A.
1 North Main St, 2nd Floor
Greenville, SC 29601
Telephone: (864) 240-3200
Facsimile: (864) 240-3300
sspruill@hsblawfirm.com

Stephen Q. Wood (pro hac vice)
Kade A. Allred (pro hac vice)
QUINN EMANUEL URQUHART &
SULLIVAN, LLP
2755 E Cottonwood Pkwy, Suite 520
Salt Lake City, UT 84121
Telephone: (801) 515-7300
Facsimilie: (801) 515-7400
stephenwood@quinnemanuel.com
kadeallred@quinnemanuel.com

Liam Timmons (pro hac vice)
QUINN EMANUEL URQUHART &
SULLIVAN, LLP
1300 I St NW, Suite 900
Washington, DC 20005
Telephone: (202) 538-8000
Facsimile (202) 538-8100
liamtimmons@quinnemanuel.com

*Attorneys for Defendants*